UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| CAPITOL SERVICES MANAGEMENT INC., <br> 3200 Martin L. King, Jr. Avenue, SE <br> Washington, D.C. 20032 <br><br> Plaintiff, <br> v. <br><br> VESTA CORPORATION <br> 175 Powder Forest Drive <br> Weatogue, CT 06089 <br><br> Serve: <br> Registered Agent <br> CT Corporation <br> 1015 15th Street NW, Suite 1000 <br> Washington DC 20005 <br><br> Defendant. | Case No. |

## COMPLAINT

**COMES NOW** Plaintiff, Capitol Services Management Inc., by and through undersigned counsel and hereby files this Complaint for tortuous interference of contract and prospective advantage against Defendant VESTA Corporation.

### JURISDICTION AND VENUE

1. Jurisdiction of the court is invoked pursuant to 28 U.S.C. § 1331 in that this action arises under the law of these United States. Further, this Court has jurisdiction because: the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00), 28 U.S.C. § 1332(a); there is diversity between the parties, 28 U.S.C. § 1332(a)(1).

1

2. Venue is proper under 28 U.S.C. § 1391(b) particularly because all of the claims asserted by Plaintiff arose from actions occurring within the jurisdiction of the District of Columbia.

## PARTIES

3. Plaintiff, Capitol Services Management Inc. ("CSMI"), is a minority-owned property management corporation located in, and organized pursuant to the law of, the District of Columbia. CSMI was at all times relevant herein, a party to a Management Agreement ("Agreement") with Park Southern Neighborhood Corporation, dated March 17, 2014, for the management of the residential apartment property located at 800 Southern Ave., SE, Washington, D.C. 20032, otherwise known as Park Southern Apartments.

4. Defendant, VESTA Corporation ("VESTA"), is a majority-owned corporation formed under the laws of and domiciled in the state of Connecticut. VESTA is considered a foreign corporation authorized to conduct business in the District of Columbia. VESTA was the former Property Manager of the Park Southern Apartments prior to CSMI's tenure. The theory of *respondeat superior* was and remains applicable throughout the pendency of this matter and at all times relevant to the matters complained of herein.

## FACTS COMMON TO ALL CLAIMS

5. On May 25, 2006 PSNC executed a "First Deed of Trust" ("Deed of Trust") for Park Southern Apartments, wherein PSNC was deemed the grantor and Defendant District of Columbia, acting by and through DHCD, was deemed the beneficiary.

6. The Deed of Trust stated that PSNC was indebted to the District of Columbia for the maximum principal sum of three million seventy-six thousand six hundred forty-one dollars ($3,076,641).

7. The Deed was made to secure to Defendant District of Columbia, (a) the repayment of the indebtedness, (b) payment of all sums, with interest thereon, advanced in accordance to protect the security of the Deed of Trust, and (c) the performance of the covenants and agreements of PSNC contained in the Deed of Trust.

8. PSNC had previously entered into a property management contract with Vesta Corporation. However, PSNC was not satisfied with VESTA's services and on March 17, 2014 terminated its contract, which was within its right.

9. On March 17, 2014 CSMI entered into a Management Agreement ("Agreement") with PSNC to manage the property located at 800 Southern Ave., SE, a 362-unit apartment building located at 800 Southern Ave. SE, Washington, D.C., otherwise known as Park Southern Apartments.

10. Pursuant to the Management Agreement, Plaintiff was appointed the exclusive agent for the management of Park Southern Apartments. According to the Agreement at Paragraph 23 the initial one year term began March 19, 2014 and expired on March 31, 2015. After expiration of the initial term, the Agreement was to continue on a year-to-year basis.

11. Paragraph 23a of the Agreement stated that after expiration of the initial term, that either Plaintiff or PSNC may terminate the Agreement without cause at the end of any calendar month, *by providing at least three (3) months advance written notice.*

12. Paragraph 23a of the Agreement also stated that in the event that the owner terminated the Agreement *without cause* prior to expiration of the initial term, the owner *shall* pay liquidated damages to the property manager in an amount equal to its most recent monthly compensation and fees collected by the number of months remaining in the initial term.

13. On March 19, 2014, immediately after Milton Bailey informed the then Mayor's Chief of Staff that PSNC removed VESTA, Mr. Bailey stated: "We already have enough to send default and foreclosure notices" to effectively takeover the property.

14. Through Milton Bailey, DHCD further admitted that it then had ongoing communication(s) with VESTA about its intention to default PSNC and Reverend Scott. (183:3-14) and ultimately to remove CSMI. Only three (3) days earlier, per an e-mail from Rowena Scott, PSNC's executive director Bailey confirmed that he had received a copy of the new PSNC-CSMI property management contract.

15. On March 23, 2014, VESTA received the following correspondence from Bailey (who apparently enjoyed a relationship with VESTA): "too early to start." VESTA's interference with Plaintiff's contract, business relationship with PSNC and Plaintiff's prospective advantage is based substantially on the following communications:

16. On March 25, 2014, Bailey originated a conference call which included David Wilmoth of Vesta, to discuss the status of Park Southern. In that phone VESTA appraised Baily that it "was going to continue to manage the property and to provide (DHCD) whatever assistance we need with respect to the ongoing condition of the property. This discussion likely included CHCD's intention to default PSNC.

17. Upon information and belief, Mr. Wilmoth also communicated with Bailey via private e-mails, which effectively circumvented FOIA scrutiny.

18. In addition to the March 25, 2014 conference call there were at least five (5) other conference calls between DHCD and VESTA regarding CSMI, PSNC property management issues and VESTA's interests.

19. On March 26, 2014, Rowena Scott confirmed to DHCD her earlier termination of VESTA.

20. On March 26, 2014, then Mayor Gray emailed Milton Bailey regarding PSNC, inquiring as follows: "have been getting a number of e-mails on this issue, are you on top of it." The Mayor's inquiry directly related to VESTA's contract with PSNC.

21. In response to Mayor Gray's inquiry, Milton Bailey wrote on or about March 26, 2014: "Park Southern has kicked VESTA to the curb claiming the contract was executed under duress and executed a new contract with Phinis Jones, Capital Services Management, Inc. VESTA will defend their contract in court if necessary." However, due to its communication with the District and its interference with CSMI's contract, as well as the government's collaboration, VESTA never adjudicated this matter against CSMI in a court of law.

22. On March 27, 2014 pertinent to the question of defaulting PSNC, Bailey discussed PSNC's termination of VESTA directly with the Mayor's Chief of Staff which was followed by phone calls between the two (2) Chiefs of Staff.

23. Notwithstanding any due diligence regarding CSMI, given VESTA's repeated and ongoing communications with government officials at DHCD, on May 6, 2014 at 11:05 DHCD's and the Mayor's respective Chiefs of Staff discussed VESTA's rights over

CSMI's regarding: "why VESTA versus CSMI" and agreed that PSNC's contract with CSMI constituted a breach of its contract with VESTA.

24. According to Bailey, without benefit of any due process to CSMI, the D.C. Attorney General's office stated that the contract with VESTA and PSNC was valid and that DHCD had to recognize that contract rather than CSMI's.

25. Murphy then stated "Right, another reason to leave VESTA in place" – DHCD having effectively terminated CSMI's contract and replaced it with VESTA – Bailey responded "Amen."

26. On April 2, 2014, and consequent to the meetings and discussions described hereinabove, DHCD sent PSNC a Notice of Default to Park Southern Apartments on the $3,076,641 loan. The Notice of Default provided PSNC with a thirty (30) day cure period, which gave PSNC until May 2, 2014 to cure the default.

27. On May 2, 2014 DHCD implemented the default process and accordingly notified PSNC of its decision, a decision taken in the context of VESTA's expressed desired to purchase the Park Southern Property.

28. Also on May 2, 2014, acting through the DHCD during the pendency of Plaintiff's contract with PSNC, the District of Columbia entered into what was euphemistically referred to as an "emergency contract" with VESTA.

29. This "emergency contract" authorized VESTA to take over the management of Park Southern Apartments on May 3, 2014 without any notice of termination to CSMI.

30. As a result, the issuance of the "emergency contract" by DHCD to VESTA effectively but inappropriately terminated Plaintiff's property management agreement

and further, precluded Plaintiff its opportunity to bid upon and continue its contractual management of the property contract.

31. Although CSMI had been providing management services to PSNC since March 19, 2014, at no time did the District of Columbia communicate with CSMI regarding its intentions or decision to place PSNC in default and unilaterally terminate CSMI's agreement with PSNC for any reason prior to the Mayoral election.

32. The District was clearly authorized by the Deed of Trust to continue CSMI's contract with PSNC or modify same.

33. Paragraph 22(c) of the Deed stated that upon PSNC's breach of any covenant or agreement in the Deed of Trust, the District of Columbia may enter upon and take and maintain full control of the property in order to perform all acts necessary and *appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases*, the collection of all rents and revenues of the property, the closing of sales contracts, the making of repairs to the property and the execution or termination of contracts providing for the management and maintenance of the property, all on such terms as are deemed to best protect the security of the Deed of Trust. (emphasis added)

34. At no time has the District properly and competitively awarded the property contract herein. A bid did occur in 2014, but peculiarly no award was made after bids were received by the Office of Contracts and Procurement on DHCD's behalf.

35. At all times referenced herein and pursuant to the Deed of Trust, PSNC enjoyed the authority to engage or terminate property management contractors. To the extent that

PSNC did not exercise that authority, DHCD had no legal basis to adjudicate any property management dispute between PSNC and VESTA prior to May 2, 2014.

## Count I
## Defendant VESTA
## Intentional Interference with Business Relations

36. Paragraphs 1-35 are reincorporated herein as if fully set forth.

37. As set forth hereinabove, Plaintiff CSMI had a valid contractual relationship with PSNC.

38. Defendant VESTA knew about the valid contractual relationship between CSMI and PSNC as evidenced by its meetings with District government officials.

39. That Defendant District of Columbia knew of the CSMI-PSNC relationship is evidenced by Mr. Bailey's testimony where he confirmed that he had received a copy of the new PSNC-CSMI property management contract.

40. VESTA intentionally interfered repeatedly with the relationship between CSMI and PSNC. For example, on March 25, 2014, Bailey originated a conference call which included David Wilmoth of Vesta, to discuss the status of Park Southern.

41. Notwithstanding its knowledge that CSMI had a business relationship with PSNC, VESTA stated it "was going to continue to manage the property and to provide (DHCD) whatever assistance we need with respect to the ongoing condition of the property." Based upon information and belief, this discussion likely included DHCD's intention to default PSNC.

42. By way of further example, Mr. Wilmoth used private emails to discuss government business with Bailey and others effectively and improperly circumventing FOIA scrutiny.

43. In addition to the March 25, 2014 conference call there were at least five other conference calls between DHCD and VESTA regarding CSMI, PSNC property management issues and VESTA's interests.

44. DHCD defaulted PSNC and declared the need for an "emergency contract" thereby giving VESTA the management contract that was being performed by CSMI at the time.

45. As a direct and proximate result of VESTA performing the management contract, CSMI's relationship with PSNC was broken and CSMI lost any income that it should have received for its management services.

**WHEREFORE** and based on the harm suffered by CSMI as a result of the actions of VESTA, Plaintiff respectfully requests this court find VESTA liable for its actions and to award CSMI appropriate compensatory and economic damages in an amount in excess of $100,000.00, punitive damages, and where appropriate declaratory and equitable relief.

**Count II**
**Defendant VESTA**
**Tortious Interference with Reasonable**
**Expectation of Prospective Economic Advantage**

46. Paragraphs 1-45 are reincorporated herein as if fully set forth.

47. Plaintiff CSMI had a valid business relationship and expectancy with a third party PSNC as expressed in the Property Management Agreement entered by the parties.

48. Defendant VESTA both knew of the relationship between CSMI and PSNC as well as CSMI's expectancy that it would continue its business relationship with PSNC.

49. That the District of Columbia knew of the CSMI-PSNC relationship is evidenced by Mr. Bailey's testimony where he confirmed that he had received a copy of the new PSNC-CSMI property management contract.

50. Defendant intentionally interfered with the relationship between CSMI and PSNC which caused the termination of the relationship between CSMI and PSNC as well as ended the expectancy that the Agreement would continue.

51. As a result of Defendant's tortious interference with Plaintiff's reasonable expectation of prospective economic advantage, CSMI suffered economic damages.

**WHEREFORE** and based on the harm suffered by CSMI as a result of Defendant's actions, Plaintiff respectfully requests this court find VESTA liable for their actions and to award CSMI compensatory and economic damages in an amount in excess of $100,000.00, punitive damages, and where appropriate, declaratory and equitable relief.

## JURY DEMAND

Plaintiff demands a jury trial as to all counts.

Respectfully submitted,

Donald M. Temple, Esq. #408749
1310 L Street NW Suite 750
Washington, DC 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
dtemplelaw@gmail.com
*Attorney for Plaintiff*