```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
CAPITOL SERVICES MANAGEMENT,  )
                              )
          Plaintiff,          )
                              )
     v.                       )  Civil Action No. 17-1756 (EGS)
                              )
VESTA CORPORATION,            )
                              )
          Defendant.          )
_____)
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Capitol Services Management, Inc. ("CSMI") brings suit against Defendant VESTA Corporation ("Vesta") for: (1) intentional interference with business relations; and (2) tortious interference with a reasonable expectation of prospective economic advantage. CSMI alleges that Vesta interfered with its contract to manage an apartment property in the District of Columbia, causing CSMI to lose the contract. Pending before the Court is Vesta's motion to dismiss the complaint. *See* ECF No. 6. Upon consideration of the motion, the response and reply thereto, and the relevant law, the Court **GRANTS** Vesta's motion and **DISMISSES** CSMI's complaint.

I.  **Background**

CSMI is a property management corporation located in the District of Columbia. Compl., ECF No. 1 ¶ 3. Vesta is a property management corporation located in Connecticut. *Id.* ¶ 4. At

1

different times, both corporations managed the Park Southern Apartments, an apartment property located in Southeast District of Columbia. *Id.* ¶¶ 3, 8, 9. This property was owned by the Park Southern Neighborhood Corporation ("PSNC") under a Deed of Trust with the District of Columbia, "acting by and through DHCD [the District of Columbia Department of Housing and Community Development]." *Id.* ¶ 5. The Deed of Trust stated that PSNC was indebted to the District of Columbia for over three million dollars. *Id.* ¶ 6. The Deed of Trust required PSNC to repay the debt with interest and perform certain duties. *Id.* ¶ 7.

PSNC contracted with Vesta to manage the Park Southern Apartments. *Id.* ¶ 8. However, on March 17, 2014, PSNC terminated the contract because it was "not satisfied" with Vesta's services. *Id.* The same day, PSNC entered into an "exclusive" management agreement with CSMI. *Id.* ¶¶ 9, 10. Pursuant to that agreement, CSMI was to manage the Park Southern Apartment for a year with the option to continue the contract on a year-to-year basis thereafter. *Id.* ¶ 10. If the contract was terminated without cause within the first year, CSMI would be entitled to the compensation owed for the time remaining under the contract. *Id.* ¶ 12.

Less than a month after PSNC entered into the management contract with CSMI, DHCD sent PSNC a "notice of default" and gave PSNC a month to cure the default. *Id.* ¶ 26. When PSNC did

not cure the default by May 2, 2014, DHCD "implemented the default process."[1] *Id.* ¶ 27. The same day, DHCD entered into an "emergency contract" with Vesta to manage the Park Southern Apartments. *Id.* ¶ 28. The emergency contract "authorized Vesta to take over the management of the Park Southern Apartments on May 3, 2014 without any notice of termination to CSMI." *Id.* ¶ 29.

CSMI alleges that Vesta knew about its business relationship and contractual expectancy, yet interfered with its management agreement. *See id.* ¶¶ 36-51. CSMI alleges that Vesta had been in frequent communication with DHCD regarding DHCD's "intention to default" PSNC and remove CSMI as property manager. *Id.* ¶ 14; *see also id.* ¶¶ 15-25. According to CSMI, Vesta told DHCD that it "was going to continue to manage the property and to provide (DHCD) whatever assistance we need with respect to the ongoing condition of the property," despite having been terminated by PSNC. *Id.* ¶¶ 16, 41. CSMI alleges that "its relationship with PSNC was broken and CSMI lost any income it should have received for its management services" as a "direct and proximate result of Vesta performing the management contract." *Id.* ¶ 45. CSMI requests $100,000 in compensatory and economic damages, as well as punitive damages. *Id.* ¶¶ 45, 51.

---

[1] It is unclear why PSNC "defaulted" or what the "default process" entailed.

3

**II. Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotations and citations omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Even so, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

**III. Analysis**

Vesta moves to dismiss CSMI's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot., ECF No. 6. It makes three arguments: (1) CSMI's complaint must be dismissed as time-barred; (2) CSMI is collaterally estopped from bringing its case against Vesta because the same issues were already litigated against the District of Columbia in the Superior Court of the District of Columbia;[2] and (3) CSMI's complaint must be dismissed because it fails to state claims of tortious interference. *See id.* at 3.[3] Because the Court agrees that CSMI's

---

[2] CSMI sued the District of Columbia in the Superior Court for the District of Columbia, claiming breach of contract, a breach of the covenant of good faith, tortious interference with contractual relations, and tortious interference with a business opportunity. *See* Ex. A, ECF No. 6-1 (Civil Case Number 2014-cv-4551). Judge Mott granted the District of Columbia's motion for summary judgment, finding that the District of Columbia was entitled to sovereign immunity. *See* Ex. B, ECF No. 6-1 at 22 (Civil Case Number 2014-cv-4551). Judge Mott also found that "CSMI cannot establish a *prima facie* case of tortious interference with contractual or business relationship" because "no evidence exists that the District of Columbia actually interfered with CSMI's contract" because "CSMI voluntarily decided not to enforce its claimed rights under the Management Agreement after DHCD entered the property." *Id.* CSMI argues that Judge Mott's findings related to its tortious interference claim are *dicta*. Pl.'s Opp'n, ECF No. 9 at 7-8. Because the Court finds that CSMI's complaint is time-barred, it need not resolve the significance of Judge Mott's second finding.
[3] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

5

complaint is time-barred, it need not consider Vesta's additional arguments.

### A. CSMI's Claims are Time-Barred

Vesta argues that CSMI was aware of its alleged tortious actions on May 3, 2014—the date that DHCD took control of the Park Southern Apartments and contracted with Vesta, thereby terminating CSMI's contract. Def.'s Mot., ECF No. 6 at 5-7. Because the statute of limitations for tortious interference claims is three years under District of Columbia law, Vesta contends that CSMI's complaint—filed on August 28, 2017—is time-barred. *Id.* at 6 (citing D.C. Code. § 12-301(8)).

It is undisputed that CSMI's claims are subject to a three-year statute of limitations pursuant to D.C. Code § 12-301(8). Pl.'s Opp'n, ECF No. 9 at 4 ("Defendant is correct that the statute of limitations for tortious interference is three (3) years."). At issue, then, is when the three-year statute of limitations began to run. CSMI contends that the statute of limitations did not begin to run until it had "actual notice" of Vesta's offending conduct, which did not occur until July 14, 2016. *Id.* at 5. Therefore, CSMI concludes that its August 28, 2017 complaint was timely.

Federal Rule of Civil Procedure 12(b)(6) "is the vehicle for asserting the affirmative defense of statutory time limitation." *Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72,

80 (D.D.C. 2013). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Bregman v. Perles,* 747 F.3d 873, 875-76 (D.C. Cir. 2014) (quoting *de Csepel v. Republic of Hungary,* 714 F.3d 591, 603 (D.C. Cir. 2013)). "As a general matter, a statute of limitations begins to run when the cause of action 'accrues'— that is, when the plaintiff can file suit and obtain relief." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013)(quotations omitted). "The statute of limitations on a tort claim ordinarily begins to run when the plaintiff sustains [the] tortious injury." *Beard v. Edmonson*, 790 A.2d 541, 546 (D.C. 2002) (discussing a tortious interference claim under District of Columbia law). Based on the facts alleged in the complaint, CSMI was injured on May 3, 2014, when DHCD terminated CSMI's management contract due to Vesta's purported influence and interference. Compl., ECF No. 1 ¶¶ 29-30, 36-51. Thus, CSMI should have filed its claim by no later than May 3, 2017.

However, CSMI argues that the discovery rule applies and thus, its claims are not barred. Pl.'s Opp'n, ECF No. 9 at 4-7. The discovery rule applies when "the relationship between the fact of injury and the alleged tortious conduct is obscure." *Beard*, 790 A.2d at 546 (quoting *Colbert v. Georgetown Univ.,* 641 A.2d 469, 472 (D.C.1994) (en banc)). "Under the discovery rule,

7

a claim does not accrue until a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Bradley v. Nat'l Ass'n of Secs. Dealers Dispute Resolution, Inc.*, 433 F.3d 846, 849 (D.C. Cir. 2005).

CSMI alleges that it did not have "actual notice" of the "predicate facts" until July 14, 2016. Pl.'s Opp'n, ECF No. 9 at 5. On July 14, 2016, CSMI received "considerable evidence" of Vesta's alleged tortious interference by way of discovery in the Superior Court litigation against the District of Columbia. *Id.* Prior to discovery, CSMI states that it "had no direct relationship with Vesta nor any basis to know the depth and breadth of Vesta's involvement and communications with the District." *Id.* While the Court must accept CSMI's factual allegations as true, the complaint makes clear that CSMI had "reason to suspect that [Vesta] did some wrong," *Bradley*, 433 F.3d at 849, when it was injured in May 2014, long before CSMI had access to discovery in the Superior Court case. For example, CSMI knew on May 3, 2014 that DHCD issued an immediate "emergency contract," allowing Vesta to manage the Park Southern Apartments. Compl., ECF No. 1 ¶ 30. Vesta's "emergency contract" "inappropriately terminated" CSMI's property management agreement and "precluded [CSMI's] opportunity to bid upon and continue its contractual management of the property contract."

*Id.* Furthermore, CSMI alleges that when Vesta began "performing the management contract" on May 3, 2014, Vesta ended "CSMI's relationship with PSNC" and caused CSMI to lose the income that "it should have received for its management services." *Id.* ¶ 45.

It is not necessary that CSMI have "actual notice" of the full extent of Vesta's involvement, as CSMI contends. *See* Pl.'s Opp'n, ECF No. 9 at 4-5. "Indeed, a right of action may accrue before the plaintiff becomes aware of all of the relevant facts." *Hendel v. World Plan Executive Council*, 705 A.2d 656, 661 (D.C. 1997). A plaintiff is on "inquiry notice" pursuant to the discovery rule "when 'the plaintiff has reason to suspect that the defendant did some wrong, even if the full extent of the wrongdoing is not yet known.'" *Bradley*, 433 F.3d at 849 (quoting *Wagner v. Sellinger,* 847 A.2d 1151, 1154 (D.C. 2004)). To that end, CSMI had reason to suspect that Vesta did "some wrong," *id.*, when it was the "immediate" recipient of an "emergency contract" after having been terminated weeks before, *see generally* Compl., ECF No. 1. The complaint establishes that CSMI knew, "or by the exercise of reasonable diligence should know" that Vesta contributed in some way to its injury. *See Beard*, 790 A.2d at 546 (quotations omitted). CSMI "does not have '*carte blanche* to defer legal action indefinitely if [it] knows or should know that [it] may have suffered injury and that the

defendant may have caused [its] harm.'" *Id.* (quoting *Hendel*, 705 A.2d at 660-61).

The Court's conclusion is bolstered by CSMI's allegations against the District of Columbia in the Superior Court litigation. *See* Civil Case Number 2014-cv-4551 (filed July 24, 2014). In claiming tortious interference against the city, CSMI alleges that the District of Columbia "collaborated with Vesta regarding the government's actions in advance of Defendant's May 3, [2014] takeover of the property." Ex. A, ECF No. 6-1 ¶ 18.[4] According to CSMI, DHCD terminated CSMI's contract in order to award the emergency management contract to Vesta "because of political and personal connections on the pretense of an 'emergency contract' award." *Id.* CSMI also alleged that the District of Columbia conspired with "non-government private parties" by entering into an agreement to "sabotage [CSMI's] contract and/or business relationship and opportunities in an unlawful manner." *Id.* ¶ 53. Such allegations regarding Vesta's and DHCD's tortious collaboration were made well before CSMI had access to the 2016 discovery. *Compare id.*, *with* Pl.'s Opp'n, ECF No. 9 at 5 (arguing that CSMI required discovery to uncover

---

[4] The Court may take judicial notice of public records on a motion to dismiss. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Covad Commc'ns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts in public records of other proceedings).

10

Vesta's alleged wrongdoing and as such, CSMI "did not have notice of the cause . . . [or] actual evidence of Vesta's actionable conduct until July 14, 2016"). CSMI does not address its 2014 allegations that Vesta had collaborated with DHCD to interfere with CSMI's management contract, nor does it address that it made such allegations well before receiving discovery.

The Court finds that CSMI knew or had reason to know about Vesta's alleged tortious conduct more than three years before it filed its claim in this Court. The Court therefore denies CSMI's request for "limited discovery on the narrow issue of when CSMI knew or should have known about Vesta's tortious conduct." Pl.'s Opp'n, ECF No. 9 at 6-7.

## IV. Conclusion and Order

The Court finds that CSMI had reason to know of Vesta's alleged tortious conduct in May 2014. Because it is undisputed that the applicable statute of limitations is three years and CSMI did not file its claim until August 2017, the Court must **GRANT** Vesta's motion to dismiss and **DISMISS** CSMI's claims as time-barred. This is a final, appealable Order.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**            July 25, 2018**