**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAPITOL SERVICES MANAGEMENT INC.,

       Plaintiff,

v.

VESTA CORPORATION,

       Defendant.

Civ. Action No. 17-1756
(EGS)

**MEMORANDUM OPINION**

I.    **Introduction**

Capitol Services Management Inc. ("CSMI" or "Plaintiff") brought this action against Vesta Corporation ("Vesta" or "Defendant") on August 28, 2017, alleging: (1) intentional interference with business relations; and (2) tortious interference with a reasonable expectation of prospective economic advantage. *See* Compl., ECF No. 1 ¶¶ 36-51.[1] Following the reversal of this Court's dismissal of the case pursuant to Federal Rule of Civil Procedure 12(b)(6), *see Capitol Servs. Mgmt. Inc. v. Vesta Corp.* ("*CSMI II*"), 933 F.3d 784, 787 (D.C. Cir. 2019); the parties engaged in discovery regarding the

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

statute of limitations in the case, *see* Minute Order (Nov. 18, 2019).

Pending before the Court is Vesta's Motion for Summary Judgment, *see* Def. Vesta Corp.'s Mot. Summ. J. on Statute of Limitations, ECF No. 29. Upon careful consideration of the motion, the opposition, and reply thereto, the applicable law, and the entire record herein, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

## II.  Background

### A. Factual

#### 1. Park Southern Apartments and the Deed of Trust

On May 25, 2006, the Park Southern Neighborhood Corporation ("PSNC") acquired the Park Southern Apartments in the District of Columbia (the "District"). Pl.'s Counter-Statement of Material Facts as to Which There is No Genuine Issue ("SMF"), ECF No. 37-1 ¶ 1 (citing Compl., ECF No. 1 ¶ 5). At the same time, PSNC executed a "First Deed of Trust" ("Deed of Trust" or "Deed") on the property. *Id.* ¶ 2 (citing Compl., ECF No. 1 ¶ 5). The Deed of Trust documented the more than $3 million that PSNC owed the District and granted the District certain rights as a beneficiary of the Deed. *Id.* ¶¶ 3-4 (citing Compl., ECF No. 1 ¶¶ 6-7).

In April 2014, the District—through the Director of the Department of Housing and Community Development ("DHCD")—sent

PSNC a notice of default and provided PSNC 30 days to cure. *Id.*
¶ 5 (citing Compl., ECF No. 1 ¶ 26). Because PSNC could not cure
the default in that time, DHCD took control of the Park Southern
Apartments on May 2, 2014 pursuant to the Deed of Trust's
default procedure. *Id.* ¶ 6 (citing Compl., ECF No. 1 ¶¶ 27-28).

### 2. Property Management of the Park Southern Apartments

Before the 2014 events discussed *supra*, PSNC contracted
with Vesta to provide property management services at the Park
Southern Apartments. *Id.* ¶ 7 (citing Compl., ECF No. 1 ¶ 8). In
March 2014, PSNC terminated that contract and entered into a new
property management contract with CSMI. *Id.* ¶ 8 (citing Compl.,
ECF No. 1 ¶¶ 8-9).

On March 19, 2014, Rowena Scott ("Ms. Scott (PSNC)"),
PSNC's owner, forwarded to Monica Ray ("Ms. Ray (CSMI)"), the
senior vice president of operations at CSMI, an email from Chuck
Moran ("Mr. Moran (Vesta)") disputing PSNC's termination of
Vesta's property management contract. *Id.* ¶ 17 (citing Ex. 4,
ECF No 29-3 at 161). CSMI later admitted in a Rule 30(b)(6)
deposition in this case that, at the time, it knew that Vesta
had been the property manager of the Park Southern Apartments
before CSMI's contract began in March 2014. *Id.* ¶ 19 (citing Ex.
3, ECF No. 29-3 at 51).

Then, on April 2, 2014, Mr. Moran (Vesta) sent an email to
residents at the Park Southern Apartments stating that "Vesta

Management is the only management company approved by the
Department of Community Housing and Development for the Park
Southern Apartment Complex." *Id.* ¶ 27 (citing Ex. 11, ECF No.
29-3 at 186; Ex. 3, ECF No. 29-3 at 59). CSMI was aware of the
email message on the date it was sent and wrote PSNC's response
letter on April 4, 2014. *Id.* ¶¶ 28-29 (citing Ex. 3, ECF No. 29-
3 at 59, 61; Ex. 12, ECF No. 29-3 at 188; Ex. 13, ECF No. 29-3
at 191).

    CSMI was also aware in April 2014 that Ms. Scott (PSNC) was
concerned that Vesta was "working behind the scene" to regain
management of the Park Southern Apartments. *Id.* ¶ 32 (citing Ex.
14, ECF No. 29-3 at 194-95).

    Property management shifted again when DHCD took control of
the Park Southern Apartments. The Deed of Trust granted the
District the authority to "take and maintain full control of the
property in order to perform all acts necessary and appropriate
for the operation and maintenance thereof, including but not
limited to . . . the execution or termination of contracts
providing for the management and maintenance of the property."
*Id.* ¶ 10 (citing Compl., ECF No. 1 ¶ 33). Thus, when DHCD
assumed control of the Park Southern Apartments in May 2014, it
entered into an "emergency contract" with Vesta. *Id.* ¶ 11
(citing Compl., ECF No. 1 ¶ 28). DHCD also terminated CSMI's
contract without the required notice. *Id.* ¶ 25 (citing Ex. 3,

ECF No. 29-3 at 70). Pursuant to the emergency contract, Vesta assumed management of the property on May 3, 2014. *See id.* ¶ 12 (citing Compl., ECF No. 1 ¶ 29).

On May 21, 2014, Phinis Jones ("Mr. Jones (CSMI)"), CSMI's owner, sent an email to Michael Kelly ("Mr. Kelly (DHCD)"), an employee at DHCD, in which he stated that he was "deeply concerned about developments to date that have resulted in the interference of [CSMI's] written property management agreement with Park Southern Apartments." *Id.* ¶ 20 (citing Ex. 5, ECF No. 29-3 at 164). He also asked for "the specific legal authorization for the 'emergency' procurement, which is the basis that [DHCD] stated Vesta was retained" and a copy of DHCD's contract with Vesta. *Id.* ¶¶ 20-21 (citing Ex. 5, ECF No. 29-3 at 164). Thus, by no later than May 23, 2014, CSMI knew that DHCD and Vesta had executed an emergency contract giving management of the Park Southern Apartments to Vesta. *Id.* ¶ 22 (citing Ex. 3, ECF No. 29-3 at 73).

At no point did CSMI learn the basis for DHCD's execution of the emergency contract with Vesta. *Id.* ¶ 24 (citing Ex. 5, ECF No. 29-3 at 164; Ex. 3, ECF No. 29-3 at 72). Rather, as CSMI's corporate designee later testified, as of May 21, 2014, CSMI believed that the emergency used to justify the contract with Vesta was pretext. *Id.* ¶ 31 (citing Ex. 3, ECF No. 29-3 at 73). CSMI also knew by August 13, 2014 that individuals at DHCD

and Vesta had preexisting relationships. *Id.* ¶ 36 (citing Ex.
10, ECF No. 293 at 183-84).

### 3. Superior Court Proceedings

On July 24, 2014, CSMI filed an action against the District
in the Superior Court of the District of Columbia ("Superior
Court"). *Id.* ¶ 13 (citing Ex. 1, ECF No. 29-3). CSMI alleged
several claims: breach of contract, breach of covenant of good
faith and fair dealing, tortious interference with contractual
relations, tortious interference with business opportunity, and
civil conspiracy. *See* Ex. 1, ECF No. 29-3 at 2.

In July 2016, during discovery in the Superior Court case,
CSMI deposed Milton Bailey ("Mr. Bailey (DHCD)"), an employee at
DHCD, who CSMI claims "'revealed considerable evidence' of
Vesta's alleged tortious interference" during his deposition.
*CSMI II*, 933 F.3d at 788 (citation omitted).

In May 2017, the Superior Court granted summary judgment
against CSMI. *Id.* The court concluded that the District was
entitled to sovereign immunity and that CSMI had failed to make
its *prima facie* case of tortious interference. *Id.*

### 4. Federal Court Proceedings

On August 28, 2017, CSMI filed the Complaint in this case
against Vesta, alleging: (1) intentional interference with
business relations; and (2) tortious interference with a
reasonable expectation of prospective economic advantage. *See*

6

Compl., ECF No. 1 ¶¶ 36-51. Vesta moved to dismiss the Complaint
in December 2017. *See generally* Vesta's Mem. in Supp. of Mot.
Dismiss, ECF No. 6. Vesta argued in part that CSMI's claims were
time-barred because the three-year statute of limitations
expired before CSMI filed its Complaint. *Id.* at 1. This Court
granted Vesta's Motion to Dismiss, concluding that "CSMI knew or
had reason to know about Vesta's alleged tortious conduct more
than three years before it filed its claim in this Court."
*Capitol Servs. Mgmt., Inc. v. VESTA Corp.* ("*CSMI I*"), 318 F.
Supp. 3d 265, 270 (D.D.C. 2018).

CSMI appealed. Notice of Appeal, ECF No. 11. The Court of
Appeals for the District of Columbia Circuit ("D.C. Circuit")
reversed this Court's judgment. *CSMI II*, 933 F.3d at 795. In so
doing, the D.C. Circuit drew several conclusions. First, it
observed that there was no dispute that "as of May 3, 2014,
[CSMI] had 'actual notice' of its injury–the cancellation of its
property management contract. And [CSMI] knew then that the
injury was caused by the District's decision to award an
'emergency contract' to Vesta." *Id.* at 792. Second, it noted
that "[t]here is also no meaningful dispute that Capitol
Services lacked 'actual notice' of Vesta's wrongdoing as of that
date." *See id.* Third, the D.C. Circuit rejected CSMI's claim
that it did not have notice of its claims against Vesta until

its deposition of Mr. Bailey (DHCD) in July 2016. *See id.* at

793. And finally, as relevant here, it concluded:

> [A]ll that the limited record shows at this
> Rule 12(b)(6) stage is that Capitol Services
> was not on actual or inquiry notice in either
> May or July of 2014, but was on inquiry notice
> at least by October 2014. The record is
> inconclusive as to Capitol Services' knowledge
> about Vesta's role prior to August 28, 2014—
> three years before this suit against Vesta was
> filed. When during that intervening period
> Capitol Services had inquiry notice of Vesta's
> potential role thus is an open factual
> question that cannot be resolved at this early
> juncture.

*Id.* The D.C. Circuit then remanded the case to this Court for

further proceedings. *Id.* at 795.

Following the appeal, the parties commenced discovery on

the limited issues regarding the statute of limitations. *See*

Minute Order (Nov. 18, 2019).

**B. Procedural**

On September 4, 2020, after several months of discovery,

Vesta filed the instant Motion for Summary Judgment. *See*

*generally* Def. Vesta Corp.'s Mot. Summ. J. on Statute of

Limitations, ECF No. 29; Def. Vesta Corp.'s Mem. P. & A. in

Supp. of Mot. Summ. J. on Statute of Limitations ("Def.'s

Mot."), ECF No. 29. CSMI filed its opposition to Vesta's motion

on October 16, 2020; *see* Pl.'s Opp'n Def.'s Mot. Summ. J.

("Pl.'s Opp'n"), ECF No. 31; and Vesta filed its reply brief on

October 23, 2020, *see* Def. Vesta Corp.'s Reply Br. in Supp. of

Mot. Summ. J. on Statute of Limitations ("Def.'s Reply"), ECF No. 32. The motion is now ripe and ready for adjudication.

### III. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, the Court must grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation marks omitted).

In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment turns on "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party"–and thus a "genuine" dispute over a material fact exists–then summary judgment is not available. *Id.* at 248. The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## IV. Analysis

### A. Exhibits 5, 10, and 14 are Admissible Non-hearsay, but Exhibit 9 is Inadmissible Hearsay

CSMI objects that several of Vesta's exhibits accompanying its Motion for Summary Judgment are inadmissible hearsay. *See* Pl.'s Opp'n, ECF No. 31 at 10, 17-18, 21, 26 n.32 (objecting to Exhibits 5, 9, 10, and 14). Vesta counters that the exhibits are admissible because the statements are not hearsay or fall under an exception to the hearsay rule. *See* Def.'s Reply, ECF No. 32 at 10-11. For the reasons that follow, the Court concludes that Exhibits 5, 10, and 14 are admissible and that Exhibit 9 is not.

"Hearsay is an out-of-court statement that 'a party offers in evidence to prove the truth of the matter asserted in the statement.'" *Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (quoting

Fed. R. Evid. 801(c)). "[H]earsay evidence is generally inadmissible," *id.*; unless it is subject to an enumerated hearsay exception, *see* Fed. R. Evid. 802; *id.* 803.

At the summary judgment stage, "only admissible evidence may be considered by the trial court." *Humane Soc'y*, 386 F. Supp. 3d at 44 (quoting *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 11 (D.D.C. 2005) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988))). However, the Court may consider evidence that is capable of being converted into admissible evidence at trial. *See Jones v. United States*, 934 F. Supp. 2d 284, 289 (D.D.C. 2013) (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)). "Accordingly, to the extent that the evidence cited by [Vesta] can be converted into admissible evidence, it can be considered on summary judgment." *Id.*

### 1. Exhibit 5

CSMI argues that the May 21, 2014 email message from Mr. Jones (CSMI) to Mr. Kelly (DHCD) is inadmissible hearsay because "Defendant erroneously attributes to CSMI Ms. Scott's written language and thoughts that Vesta was 'working behind the scene' to oust CSMI from the property." Pl.'s Opp'n, ECF No. 31 at 17. Vesta responds that it has not offered the exhibit for the truth of Mr. Jones's statement. Def.'s Reply, ECF No. 32 at 10. Rather, Vesta offered the exhibit "to demonstrate that CSMI had

11

knowledge of the emergency contract between DHCD and Vesta no later than May 21, 2014." *Id.*

The Court agrees with Vesta that this evidence is not hearsay. An out-of-court statement constitutes hearsay only insofar as it has been offered for the truth of the matter asserted in the statement. *Humane Soc'y*, 386 F. Supp. 3d at 44 (quoting Fed. R. Evid. 801(c)). That same statement still "might be offered to show that the declarant had certain information, or entertained a specific belief." *United States v. Murphy*, 193 F.3d 1, 6 n.2 (1st Cir. 1999) (citing 5 Weinstein's Federal Evidence § 801.03[4], at 801–14.1 to 801–15 (2d ed. 1999)). Here, Vesta has offered the May 21, 2014 email from Mr. Jones (CSMI) to Mr. Kelly (DHCD) to demonstrate that Mr. Jones (CSMI) had certain information—namely, that he knew that there had been "interference of [his] property management agreement with Park Southern Apartments" and that "VESTA was retained." Ex. 5, ECF No. 29-3 at 164. The Court therefore concludes that Exhibit 5 is admissible.[2]

### 2. Exhibit 9

CSMI next asserts that the *Washington Post* article that Vesta has submitted is inadmissible hearsay and that several

---

[2] Because Exhibit 5 is admissible non-hearsay, the Court will not address Vesta's argument that the emails here fall under the hearsay exception for business records. *See* Def.'s Reply, ECF No. 32 at 11 (citing Fed. R. Evid. 803(6)).

statements within that article are also hearsay. *See* Pl.'s
Opp'n, ECF No. 31 at 10, 17. Vesta defends the statements within
the article as admissible hearsay, *see* Def.'s Reply, ECF No. 32
at 11 (arguing that statements by CSMI's attorney in the
Superior Court litigation are admissions of a party-opponent
under Fed. R. Evid. 801(d)(2)(D)); but does not offer a defense
of the article as a whole, *see generally id.*

The *Washington Post* article is inadmissible hearsay.
Newspaper articles like the one offered here "usually provide no
evidence of the reporter's perception, memory or sincerity and,
therefore, lack circumstantial guarantees of trustworthiness."
*Atkins v. Fischer*, 232 F.R.D. 116, 132 (D.D.C. 2005) (quoting
*Eisenstadt v. Allen*, 113 F.3d 1240 (9th Cir. 1997) (Table)
("[N]ewspaper articles clearly fall within the definition of
hearsay . . . and, thus, are inadmissible.")). As a result,
"courts within this Circuit have consistently barred newspaper
articles from introduction as evidence due to the fact that they
constitute inadmissible hearsay." *Id.* (citing *Metro. Council of
NAACP Branches v. Fed. Commc'ns Comm'n*, 46 F.3d 1154, 1165 (D.C.
Cir. 1995); *United States v. Pollard*, 161 F. Supp. 2d 1, 6
(D.D.C. 2001)). The Court therefore will not consider this
exhibit with Vesta's Motion for Summary Judgment.[3]

---

[3] The Court need not address Vesta's argument that statements by
Donald Temple, CSMI's attorney, fall within an exception to the

### 3. Exhibit 10

CSMI also objects to the admissibility of the email messages that Ms. Scott (PSNC) forwarded to Ms. Ray (CSMI) on August 13, 2014 on hearsay grounds. *See* Pl.'s Opp'n, ECF No. 31 at 17-18. Vesta argues that it did not submit this exhibit "for the tru[th] of Rowena Scott's statement regarding the friendship between Milton Bailey and David Willmarth, but rather for its effect on Monica Ray on August 13, 2014." Def.'s Reply, ECF No. 32 at 10.

The Court concludes that this evidence is not hearsay. As with Exhibit 5, this out-of-court statement falls outside the definition of hearsay because it has not been offered for the truth of the matter asserted. *See supra*; *Humane Soc'y*, 386 F. Supp. 3d at 44 (quoting Fed. R. Evid. 801(c)). Vesta has offered these email messages to show "their effect on the listener," so they are admissible non-hearsay. *Jones*, 934 F. Supp. 2d at 290 (citing *Ali v. D.C. Gov't*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011)) (rejecting Rule 56(c)(2) objection for evidence offered on summary judgment for the effect on the listener); *see* Def.'s

---

hearsay rule because it has raised no argument that the article containing those statements is admissible. *See, e.g.*, *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 97 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020) (declining to consider double hearsay where "Plaintiffs have not explained why the Court should admit it, either as an exception to or an exclusion from the hearsay rule").

Mot., ECF No. 29 at 29, 30 (submitting evidence to show what Ms. Scott knew as of August 13, 2014). Thus, the Court determines that Exhibit 10 is admissible.[4]

### 4. Exhibit 14

Finally, CSMI argues that the email exchange between Ms. Ray (CSMI) and Mr. Smith (CSMI) in April 2014 constitutes inadmissible hearsay. *See* Pl.'s Opp'n, ECF No. 31 at 21. Vesta contends that these emails are not hearsay, as it offered the exhibit "to demonstrate the effect on Monica Ray," not "to prove that Vesta was 'working behind the scene' to oust CSMI." Def.'s Reply, ECF No. 32 at 10.

The Court concludes that this exhibit, like the other two exhibits with email messages discussed *supra*, is admissible non-hearsay. Vesta uses this evidence in its summary judgment briefing as evidence that "CSMI knew that DHCD and Vesta had communicated before entering into the emergency contract" and "was aware as of April 28, 2014 that Vesta was 'working behind the scene' to oust CSMI from the property." *Id.* at 30 (citing Ex. 14, ECF No. 29-3 at 193-95). In other words, Vesta has offered the email messages to demonstrate "their effect on the listener," *Jones*, 934 F. Supp. 2d at 290 (citing *Ali*, 810 F.

---

[4] Because Exhibit 10 is admissible non-hearsay, the Court will not address Vesta's argument that the emails here fall under the hearsay exception for business records. *See* Def.'s Reply, ECF No. 32 at 11 (citing Fed. R. Evid. 803(6)).

Supp. 2d at 83); not to prove that Vesta was "working behind the scene" against CSMI.

In summary, the Court concludes that Exhibits 5, 10, and 14 are admissible non-hearsay and will consider this evidence along with Vesta's Motion for Summary Judgment. The Court also concludes that Exhibit 9 is inadmissible hearsay and will not further consider that evidence.

**B. The Discovery Rule Applies in This Case**

Vesta first argues that CSMI's claims are time-barred because, under the District of Columbia's general accrual rule, the claims accrued when CSMI was injured on May 2, 2014. *See* Def.'s Mot., ECF No. 29 at 16. CSMI counters that its claims did not accrue when it was injured because the discovery rule, not the general accrual rule, applies. *See* Pl.'s Opp'n, ECF No. 31 at 10-15. For the reasons below, the Court concludes that the discovery rule is applicable here.

The parties agree that CSMI's claims are subject to a three-year statute of limitations. *See* D.C. Code § 12-301(8); *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546 (D.C. 2002) (three-year statute of limitations for tortious interference with contract); *Carr v. Brown*, 395 A.2d 79, 83 (D.C. 1978) (three-year statute of limitations for tortious interference with prospective advantage). They disagree, however, on when the statute of limitations began to run. "Ordinarily under District

16

[of Columbia] law, the statute of limitations for a tort claim starts to run when the plaintiff is injured." *CSMI II*, 933 F.3d at 790 (citing *Amobi v. Dist. of Columbia Dep't of Corr.*, 755 F.3d 980, 994 (D.C. Cir. 2014)). Specifically, a claim accrues at the time of injury if "the fact of an injury can be readily determined." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (citing *Burns v. Bell*, 409 A.2d 614, 615 (D.C. 1979); *Shehyn v. Dist. of Columbia*, 392 A.2d 1008, 1013 (D.C. 1978)). But "[w]here the relationship between the fact of injury and the alleged tortious conduct may be obscure," District of Columbia law requires application of the "discovery rule" to determine when the claim accrues. *Id.* at 472-73 (citing *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425-26 (D.C. 1986)).

The Court first addresses CSMI's response to the Motion for Summary Judgment: namely, that Vesta cannot now argue against application of the discovery rule. *See* Pl.'s Opp'n, ECF No. 31 at 10-11. CSMI reasons that Vesta should not be permitted to "reiterate" the arguments it presented in its Motion to Dismiss briefing and that the D.C. Circuit has already conclusively determined that the discovery rule applies in this case. *Id.* Vesta counters that it is making new arguments at the summary judgment stage and that this Court and the D.C. Circuit merely

"operated on the assumption that the discovery rule automatically applied." *See* Def.'s Reply, ECF No. 32 at 2-3.

Neither interpretation of the prior proceedings in this case is entirely accurate. CSMI argued clearly for application of the discovery rule before both courts in the Motion to Dismiss proceedings. *See* Pl.'s Opp'n Def. Vesta Corp.'s Mot. Dismiss Pl.'s Compl., ECF No. 9 at 4-5; Final Principal Br. of Appellant, Doc. 1776808 at 34-36; Final Reply Br. of Appellant, Doc. 1776809 at 20-21. Vesta, on the other hand, did "not meaningfully dispute" the rule before either court. *CSMI II*, 933 F.3d at 790. This limited response "was not enough to put the issue in controversy," *CSMI II*, 933 F.3d at 790 n.1 (citing *Davis v. Pension Benefit Guar. Corp.*, 734 F.3d 1161, 1166-67 (D.C. Cir. 2013)); and so both this Court and the D.C. Circuit applied the discovery rule.

Similarly, CSMI's limited argument for preclusion is insufficient to overcome Vesta's motion now. CSMI presents no caselaw or other authority suggesting that Vesta's failure to put the discovery rule in controversy earlier precludes argument at this stage. CSMI cannot "mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Id.* (citation and internal quotation marks omitted). The Court therefore declines to treat Vesta's argument against the

discovery rule as precluded. *Cf. Klay v. Panetta*, 924 F. Supp. 2d 8, 23 (D.D.C. 2013), (declining to treat silence as concession where "it can hardly be said that the issue was advanced or briefed in any substantive way"), *aff'd*, 758 F.3d 369 (D.C. Cir. 2014).

The parties next dispute when the discovery rule should substitute for the general accrual rule. Vesta argues that the discovery rule is a "narrow exception" that "does not apply in this case." Def.'s Mot., ECF No. 29 at 17. It reasons that the discovery rule applies only in "cases where the relationship between the fact of injury and the alleged tortious conduct *is obscure* when the injury occurs." *Id.* (quoting *Bussineau*, 518 A.2d at 425) (emphasis added by Vesta). To determine whether the discovery rule applies, Vesta explains, courts look to the four factors articulated in *C.B. Harris & Co. v. Wells Fargo & Co.*, 113 F. Supp. 3d 166 (D.D.C. 2015). *See id.* at 17–18. CSMI rejects Vesta's explanation but does not offer an alternative understanding of when the discovery rule displaces the general accrual rule. *See generally* Pl.'s Opp'n, ECF No. 31 at 10–15.

"[T]he discovery rule 'emerged to redress situations in which the fact of injury was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred.'" *Stager v. Schneider*, 494 A.2d 1307, 1316 (D.C. 1985) (quoting *Ehrenhaft v. Malcolm Price,*

*Inc.*, 483 A.2d 1192, 1201 (D.C. 1984)). Courts now apply the
rule "in cases where the relationship between the fact of injury
and the alleged tortious conduct is obscure when the injury
occurs." *Bussineau*, 518 A.2d at 425. Application of the rule
therefore depends on the circumstances of the case, not, as
Vesta suggests, on the type of claim. *Compare Wash. Tennis &
Educ. Found., Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128,
138 (D.D.C. 2018), *with* Def.'s Mot., ECF No. 29 at 17. The D.C.
Court of Appeals has set out four factors courts must consider
to determine whether the discovery rule should apply:

> (1) whether the plaintiff is a lay person and
> may therefore justifiably rely on the
> professional skills of those hired to perform
> the work; (2) whether the deficiency in design
> or construction was latent; (3) whether the
> equities favored protecting the plaintiff as
> weighed against potential prejudice to the
> defendant; and (4) whether judicial economy
> would be served by its application.

*Wash. Tennis & Educ. Found., Inc.*, 324 F. Supp. 3d at 139
(citing *Ehrenhaft*, 483 A.2d at 1202-03).

Vesta asserts that all four factors weigh against
application of the discovery rule here. *See* Def.'s Mot., ECF No.
29 at 19. Comparing this case to *C.B. Harris*, Vesta explains
that the discovery rule is inapplicable because: (1) CSMI "is an
ordinary business . . . with experience in the property
management business in D.C."; (2) CSMI "immediately" knew it had
been injured; (3) the importance of finality in commercial

20

dealings favors Vesta; and (4) judicial economy favors "more timely adjudication of complaints." *Id.*; *see also id.* at 18-19 (discussing how the court weighed the same factors in *C.B. Harris*).

CSMI opposes comparison to *C.B. Harris*. *See* Pl.'s Opp'n, ECF No. 31 at 13-15. It contends that the *C.B. Harris* court declined to apply the discovery rule because the plaintiff there sued for breach of contract—a claim that, unlike a claim for tortious interference, does not require proof of intent. *Id.* (citing *C.B. Harris*, 113 F. Supp. 3d at 172). The Court disagrees. As Vesta explains in its reply briefing, at no point did the *C.B. Harris* court limit application of the discovery rule to tort claims. *See* Def.'s Reply, ECF No. 32 at 4; *see generally C.B. Harris*, 113 F. Supp. 3d 166. Nor could that court have done so, as the D.C. Court of Appeals has long accepted and rejected the application of the discovery rule in a variety of cases. *See, e.g.*, *Bussineau*, 518 A.2d at 425 (collecting tort cases where discovery rule applied); *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1 (D.D.C. 2019) (denying application of the discovery rule in sexual abuse case); *Perry v. Int'l. Bhd. of Teamsters*, 247 F. Supp. 3d 1 (D.D.C. 2017) (denying application of the discovery rule in ERISA claim); *Alkasabi v. Wash. Mut. Bank, F.A.*, 31 F. Supp. 3d 101 (D.D.C. 2014) (denying application of the discovery rule in case alleging violation of

Financial Institutions Reform Recovery and Enforcement Act); *Brown v. NAS*, 844 A.2d 1113 (D.C. 2004) (denying application of the discovery rule in employment discrimination case); *Beard*, 790 A.2d 541 (denying application of the discovery rule in tortious interference case); *Mullin v. Wash. Free Weekly*, 785 A.2d 296 (D.C. 2001) (denying application of the discovery rule in defamation case). Indeed, Vesta points to at least one court that has applied the discovery rule to both contract and tort claims. *See Kemp v. Eiland*, 139 F. Supp. 3d 329, 350-51 (D.D.C. 2015).

As to Vesta's explanation of how the four factors should be weighed, CSMI objects only to the first and second factors. *See* Pl.'s Opp'n, ECF No. 31 at 14-15. As to the first factor, CSMI claims that "[n]either . . . business experience nor savvy" would help "an ordinary business" like itself detect that "outside actors" sought to tortiously interfere with its business relations and prospective economic advantage. *Id.* at 14. Vesta's caselaw does not suggest otherwise. In *C.B. Harris*, the court found that the plaintiff was "an 'ordinary business,' which could have detected the allegedly unauthorized fund transfers" made by the defendant bank "within the three-year statute of limitations period." *C.B. Harris*, 113 F. Supp. 3d at 171.

CSMI also contests Vesta's argument as to the second factor. Vesta claims that "there is no allegation that CSMI's injuries were latent or difficult to detect," Def.'s Mot., ECF No. 29 at 17; but this claim oversimplifies matters. D.C. law regularly applies the discovery rule "when the relationship between the injury and the wrongful conduct is obscure," *Azoroh v. Auto. Ins. Co. of Hartford*, 200 F. Supp. 3d 127, 130 (D.D.C. 2016) (citing *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003); *Moore v. Dist. of Columbia*, 445 F. App'x 365, 366 (D.C. Cir. 2011)); not merely where the injury alone is obscure, *see Stager*, 494 A.2d at 1316. Indeed, Vesta's own recitation of the discovery rule considers the relationship between the injury and "the malfeasance." *See* Def.'s Mot., ECF No. 29 at 17-18. Here, although CSMI concedes that it had actual notice that DHCD cancelled its contract and installed Vesta as property manager by May 3, 2014, it argues that it did not know that Vesta had tortiously interfered with its contract at that time. *See* Pl.'s Opp'n, ECF No. 31 at 12-13. In other words, CSMI knew of the injury DHCD inflicted but not of Vesta's alleged wrongful conduct. *See id.*

The fact that CSMI had notice of DHCD's wrongful conduct does not save Vesta. Vesta reasons that "'a plaintiff's knowledge of misconduct by one defendant places her on notice of claims against the connected potential co-defendants.'" Def.'s

Mot., ECF No. 29 at 19-20 (quoting *Kipp DC*, 373 F. Supp. 3d at
11). However, as CSMI explains in its opposition briefing,
CSMI's knowledge of DHCD's wrongdoing does not equate to
knowledge of Vesta's wrongdoing. *See* Pl.'s Opp'n, ECF No. 31 at
13; *CSMI II*, 933 F.3d at 792 (quoting *Diamond v. Davis*, 680 A.2d
364, 380 (D.C. 1996)) (citing *Cevenini v. Archbishop of Wash.*,
707 A.2d 768, 773 (D.C. 1998)). The second factor—the latency of
the wrongful conduct and resulting injury—thus weighs in CSMI's
favor.

With two factors now weighing against Vesta, the Court
determines that the discovery rule is applicable. The parties do
not cite caselaw suggesting how the Court ought to weigh each
factor against the others. *See generally* Def.'s Mot., ECF No.
29; Pl.'s Opp'n, ECF No. 31. The caselaw they cite, however,
does converge on the significance of the obscure relationship
between the injury and the wrongful conduct. *See Bussineau*, 518
A.2d at 425; *Stager*, 494 A.2d at 1316. Because that factor
weighs in CSMI's favor, the Court will apply the discovery rule
to toll the statute of limitations.

### C. CSMI Did Not Have Actual Notice Before August 28, 2014

The Court turns to the question of when CSMI's claims
accrued and the statute of limitations began to run. Under the
discovery rule, a claim accrues "when the plaintiff 'either has
actual knowledge of a cause of action' or is otherwise 'charged

with knowledge of that cause of action.'" *CSMI II*, 933 F.3d at 790 (quoting *Cevenini*, 707 A.2d at 771). Put differently, a plaintiff's claims do not accrue until he has actual notice or inquiry notice: "'(1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing.'" *Id.* at 791 (quoting *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019)). Because CSMI filed this action on August 28, 2017, *see generally* Compl., ECF No. 1; it must not have had notice of these three elements until after August 28, 2014 to survive Vesta's statute of limitations challenge on this Motion for Summary Judgment, *see* D.C. Code § 12-301(8).

The parties do not dispute that as of May 3, 2014, CSMI had actual notice of its injury (the cancellation of its property management contract) and the cause in fact of that injury (the District's decision to award an emergency contract to Vesta). *See CSMI II*, 933 F.3d at 792; Def.'s Mot., ECF No. 29 at 23-24; Pl.'s Opp'n, ECF No. 31 at 13. They disagree as to when CSMI had notice "of some evidence of wrongdoing."[5] Vesta argues that CSMI

---

[5] CSMI seems to dispute whether it must have had notice of "some evidence of wrongdoing" or notice of "all of the essential elements of its cause of action." *See* Def.'s Mot., ECF No. 29 at 20-23; *cf.* Pl.'s Opp'n, ECF No. 31 at 10-15. The difference between these two standards, if any, is unnecessary to decide at this time because the cases that CSMI cites all discuss notice of "some evidence of wrongdoing." *See generally* Pl.'s Opp'n, ECF No. 31.

had actual notice of its claims in May 2014 or, alternatively, before August 28, 2014. *See* Def.'s Mot., ECF No. 29 at 20, 27. Vesta identifies portions of CSMI's Rule 30(b)(6) deposition testimony and email exchanges to support the timelines it offers. *See id.* at 23-31. CSMI does not present a different timeline but disputes that the record demonstrates it had actual notice before August 28, 2014. *See* Pl.'s Opp'n, ECF No. 31 at 15-19. For the reasons that follow, the Court concludes that CSMI did not have actual notice of Vesta's alleged wrongdoing before August 28, 2014.

Vesta alleges that CSMI knew two predicate facts that, taken together, put it on actual notice of Vesta's alleged wrongdoing by May 3, 2014. *See* Def.'s Mot., ECF No. 29 at 23-27. First, Vesta claims that "CSMI knew that Vesta had previously managed the property on March 19, 2014." *Id.* at 25. Vesta points to two portions of the record for support: (1) an email that Ms. Scott (PSNC) forwarded to Ms. Ray (CSMI) on March 19, 2014 discussing PSNC's termination of Vesta's management agreement, *see id.* (citing Ex. 4, ECF No. 29-3 at 160-62); and (2) CSMI's admission in its Rule 30(b)(6) deposition that, at the time it started managing PSNC on March 19, 2014, it knew that Vesta had previously been the property manager, *see id.* (citing Ex. 3, ECF No. 29-3 at 51). Second, Vesta claims that "CSMI also knew of the emergency contract between DHCD and Vesta no later than May

21, 2014." *Id.* at 26. For proof, Vesta identifies an email message on May 21, 2014 in which Ms. Jones (CSMI) asked Mr. Kelly (DHCD) for "'the specific legal authorization for the 'emergency' procurement, which is the basis that [DHCD] stated Vesta was retained'" and a copy of the emergency contract. *Id.* at 26 (quoting Ex. 5, ECF No. 29-3 at 164).

Contrary to Vesta's suggestion, these facts are not new. The D.C. Circuit considered these same facts in the Motion to Dismiss proceedings and determined that these facts put CSMI "on notice of its claims against the District" but did not "hint[] at Vesta's role in the contract's termination." *CSMI II*, 933 F.3d at 792. So, as CSMI asserts in its opposition briefing, neither the fact that PSNC previously contracted with Vesta nor the fact that DHCD gave the emergency contract to Vesta "implicate[s] Vesta in any wrongdoing." Pl.'s Opp'n, ECF No. 31 at 16. CSMI therefore did not have actual notice of Vesta's alleged wrongdoing in May 2014.

Vesta's argument that CSMI had actual notice of Vesta's alleged wrongdoing before August 28, 2014 fares no better. To support its August timeline, Vesta cites evidence obtained through discovery[6] and the following facts:

1. CSMI knew about the emergency contract by May 21, 2014;

---

[6] The Court will not consider the *Washington Post* article that Vesta cites because it is inadmissible hearsay. *See supra*.

2. CSMI never knew the basis for the emergency contract, despite asking on May 21, 2014;

3. CSMI knew that DHCD terminated its contract without prior notice;

4. Ms. Ray (CSMI) was informed by Ms. Scott (PSNC) on August 13, 2014 that Mr. Bailey (DHCD) and Mr. Willmarth (Vesta) "have been friends for more then [sic] 40 years";

5. On April 2, 2014, CSMI knew that Vesta told PSNC residents that Vesta remained the property manager, and on April 4, 2014, CSMI responded to that letter;

6. CSMI believed that the emergency contract was pretextual as of May 21, 2014;

7. CSMI "was aware as of April 28, 2014 that Vesta was 'working behind the scene' to oust CSMI from the property";

8. CSMI knew that it had been ousted, that Vesta got the emergency contract by May 2014, and that "individuals at DHCD and Vesta had preexisting relationships" as of August 13, 2014.

Def.'s Mot., ECF No. 29 at 28-30 (citing several exhibits). Together, Vesta claims, these facts "present insurmountable proof"—and certainly more than "some evidence"—that CSMI had actual notice before August 28, 2014. *Id.* at 30.

CSMI disputes the conclusion Vesta draws from that evidence. The Court agrees with CSMI's contention that points

28

one, two, three, and six implicate only the District, not Vesta, in any wrongdoing. *See* Pl.'s Opp'n, ECF No. 31 at 16-17; *CSMI II*, 933 F.3d at 792. The Court also agrees that Vesta's fifth point speaks only to the conflict between PSNC and Vesta and does not involve CSMI. *See* Pl.'s Opp'n, ECF No. 31 at 17; *see also* Def.'s Mot., ECF No. 29 at 30-31 (discussing Vesta's dispute with PSNC over the termination of its first contract).

Vesta's remaining three points present a closer question as to what CSMI might have known. However, "actual notice is that notice which a plaintiff actually possesses." *Diamond*, 680 A.2d at 372 (internal quotation marks omitted). Evidence of a "pre-existing relationship, as in points four and eight, means little on its face." Pl.'s Opp'n, ECF No. 31 at 18. Moreover, Vesta's most powerful fact—that CSMI "was aware as of April 28, 2014 that Vesta was 'working behind the scene' to oust CSMI from the property," Def.'s Mot., ECF No. 29 at 30 (quoting Ex. 14, ECF No. 29-3 at 194); loses its luster upon review of the actual statements in the exhibit, *see* Ex. 14, ECF No. 29-3 at 194 (Mr. Smith (CSMI) emailed Ms. Ray (CSMI) to tell her that Ms. Scott (PSNC) told him that the concierge's "wife is one of the ring leaders trying to get us and her out of here working behind the scene with and for Vesta"). The fact that certain people at CSMI had been told that the concierge's wife was "working behind the scene" with Vesta hardly indicates that CSMI actually knew Vesta

was tortiously interfering with its property management contract. After all, "it was reasonable to assume that two contracting parties, like DHCD and Vesta, communicated before executing the emergency contract." Def.'s Mot., ECF No. 29 at 30.

Accordingly, the Court concludes that CSMI did not have actual notice of Vesta's alleged wrongdoing as of August 28, 2014.[7]

### D. CSMI Had Inquiry Notice Before August 28, 2014

Finally, Vesta argues that CSMI had inquiry notice of Vesta's alleged wrongdoing before August 28, 2014. Def.'s Mot., ECF No. 29 at 31. It reasons that even if the facts it marshalled do "not constitute actual notice, they certainly should be enough for inquiry notice." *Id.* at 33. CSMI claims that Vesta conceded that there is no inquiry notice and that Vesta's own exhibits demonstrate that CSMI did not have inquiry notice until sometime after August 28, 2014. For the reasons below, the Court concludes that the undisputed material facts demonstrate that CSMI had inquiry notice before August 28, 2014.

"In the District of Columbia, a plaintiff can be charged with inquiry notice of his claims even if he is not actually

---

[7] The Court notes briefly that CSMI's reference to the standard of review for a motion to dismiss under Rule 12(b)(6) is inapt. *See* Pl.'s Opp'n, ECF No. 31 at 18-19. The Court is now bound by the summary judgment standard discussed *supra*.

aware of each essential element of his cause of action."
*Cevenini*, 707 A.2d at 771. Whereas "actual notice is that notice
which a plaintiff actually possesses; inquiry notice is that
notice which a plaintiff would have possessed after due
investigation." *Diamond*, 680 A.2d at 372 (internal quotation
marks omitted). As the D.C. Circuit explained in the prior
proceedings in this case, inquiry notice "does not refer to 'the
amount of information that triggers a duty to investigate,' but
rather the 'quantum of knowledge required to' 'charge[] [a
plaintiff] with knowledge of [his] cause of action[.]" *CSMI II*,
933 F.3d at 791 (quoting *Diamond*, 680 A.2d at 372) (other
citations omitted).

  Vesta claims that CSMI had that "quantum of knowledge" to
charge it with knowledge of its cause of action against Vesta.
Specifically, Vesta contends that the eight points it listed to
charge CSMI with actual notice of its alleged wrongdoing also
prove that CSMI had inquiry notice before August 28, 2014 and
perhaps as early as May 2014. *See* Def.'s Mot., ECF No. 29 at 33;
*see also* Def.'s Reply, ECF No. 32 at 6-9. To elaborate on
Vesta's theory: CSMI knew as of April 2, 2014 that Vesta
believed that it was "the only management company approved by
the Department of Community Housing and Development for the Park
Southern Apartment Complex." Def.'s Mot., ECF No. 29 at 29
(quoting Ex. 11, ECF No. 29-3 at 186). CSMI knew as of May 21,

2014 that the District could not state any emergency that would have given it the right to cancel CSMI's contract and enter into a new contract with Vesta. *Id.* at 28-30 (citing Ex. 3, ECF No. 29-3; Ex. 5, ECF No. 29-3; Ex. 7, ECF No. 29-3; Ex. 8, ECF No. 29-3). CSMI knew as of August 13, 2014 that "individuals at DHCD and Vesta had preexisting relationships" and that two of those individuals "ha[d] been friends for more then [sic] 40 years." *Id.* at 29-30 (citing Ex. 10, ECF No. 29-3). CSMI had even heard that someone was "working behind the scene with and for Vesta." Ex. 14, ECF No. 29-3 at 194; Def.'s Mot., ECF No. 29 at 30.

CSMI contests that these facts provide a foundation for inquiry notice. These facts, CSMI argues, charge it with notice only of the District's wrongdoing, not of Vesta's alleged wrongdoing. *See* Pl.'s Opp'n, ECF No. 31 at 21-22. This, however, is not enough to overcome Vesta's theory, which presents at least the "quantum of knowledge" necessary to charge CSMI with knowledge of Vesta's alleged misconduct. *Cf. CSMI II*, 933 F.3d at 792-93 (describing Vesta's similar argument on appeal for the Motion to Dismiss as "a really good argument").

CSMI also points to facts from the record to suggest that it had notice only of the District's wrongdoing as of August 28, 2014. *See* Pl.'s Opp'n, ECF No. 31 at 21-23. Some of these facts support CSMI's lack of actual notice but do not foreclose the possibility that CSMI had inquiry notice. *See id.* at 23

(discussing that the District did not disclose that it had met with Vesta or provide their communications). The other facts that CSMI cites prove that CSMI had notice of the District's wrongdoing. *See id.* at 22 (citing Ex. 5, ECF No. 29-3; Ex. 8, ECF No. 29-3). Notice of the District's wrongdoing and notice of Vesta's alleged wrongdoing are not mutually exclusive, though.

The Court concludes that there is no genuine dispute of material fact as to whether CSMI possessed the "quantum of knowledge" to charge it with knowledge of its cause of action against Vesta before August 28, 2014. Therefore, the Court concludes that CSMI had inquiry notice of Vesta's alleged wrongdoing before August 28, 2014. Because CSMI also had actual notice of its injury and the cause in fact of that injury by May 3, 2014, *see supra*; its claims against Vesta accrued before August 28, 2014, and the statute of limitations expired before CSMI filed on August 28, 2017. Accordingly, the Court holds that CSMI's Complaint is untimely.

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Vesta Corporation's Motion for Summary Judgment on the Statute of Limitations, ECF No. 29.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **August 25, 2023**